FILED

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

99 NOV 12 AM 11: 56

U.S. DISTRICT COURT
N.D. OF ALABAMA

ESTATE OF ELIZABETH PARAMORE )
O'NEAL, deceased, ELIZABETH O'NEAL )
SHANNON, EMMET O'NEAL, II, and EMMET )
O'NEAL, III, Personal Representatives, )
              Plaintiffs, )  **CIVIL ACTION NUMBER:**
     v. )  **CV-97-J-2189-S**
     )
**UNITED STATES OF AMERICA,** )
         **Defendant.** )

ENTERED

NOV 1 2 1999

## MEMORANDUM OPINION

Currently before the Court are cross-motions for summary judgment as to the claims

asserted by plaintiffs and the counterclaims asserted by defendant (docs. 24 and 26). This

court heard oral argument on the motions and has reviewed the memoranda of law and

evidence submitted by the parties. The facts before this court are as follows:

Plaintiffs filed this lawsuit to obtain a refund of $1,883,762.00 in federal estate taxes

and interest collected from the Estate of Elizabeth P. O'Neal, deceased. The refund is based

upon claims made against plaintiffs for transferee gift tax and generation-skipping transfer

tax liabilities asserted against the donees of certain gifts made by Elizabeth P. O'Neal ("Mrs.

O'Neal").

Four issues are raised by the plaintiffs: (1) whether Mrs. O'Neal's estate is entitled

to claim a deduction for certain claims made against her estate by her children and

grandchildren, in which such family members seek reimbursement of their donee/transferee

liabilities arising from the gift of stock made by Mrs. O'Neal to them during her lifetime; (2)

47

whether Mrs. O'Neal's estate is entitled to deduct certain expenses, such as attorneys' fees and interest as administrative expenses; (3) whether Mrs. O'Neal's gross estate should be increased to reflect a claim to recover certain unauthorized transfers of funds made by her son, Emmet O'Neal, II, as payment of attorney's fees; and (4) whether 26 U.S.C. § 2504(c) precludes the revaluation of gifts of shares of stock made by Mrs. O'Neal during her lifetime for federal estate tax purposes.

Defendant originally responded with six counterclaims asserting that plaintiffs are indebted to defendant in the amount of $684,631.00, plus interest. Remaining of those counterclaims are: (1) certain payments by Mrs. O'Neal's attorney-in-fact prior to her death were not for her benefit and therefore her estate had a claim against said attorney-in-fact; (2) certain attorneys' fees paid by plaintiffs were not for the benefit of the estate and therefore not deductible as administrative expenses; (3) certain interest was not deductible; (4) claims against the estate by the donees of gifts by Mrs. O'Neal were not deductible; and (5) the estate's "adjusted taxable gifts" and "gift tax payable" must be increased to reflect revalued gifts.

Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the Court is of the opinion that plaintiffs' motion for summary judgment is due to be granted in part and denied in part and that defendant's motion for summary judgment is due to be granted in part and denied in part.

## I. FACTUAL BACKGROUND

The facts of the case are undisputed. Mrs. O'Neal died in Birmingham, Alabama on July 23, 1994. At the time of her death, she was a resident of Jefferson County, Alabama. Mrs. O'Neal and her husband, Kirkman O'Neal ("Mr. O'Neal") had two children, Emmet O'Neal, II and Elizabeth Shannon, and seven grandchildren, three by Mr. O'Neal, II and four by Elizabeth Shannon. On November 3, 1987, Mrs. O'Neal made gifts ("1987 Gifts") of voting and non-voting common stock in O'Neal Steel, Inc. (the "Company") to her children and grandchildren ("donees").[1] Plaintiffs' exhibit 2, affidavit of Emmet O'Neal, II at 1-3 ("O'Neal affidavit"). Each of Mrs. O'Neal's children received 19 shares of O'Neal Steel voting ("Class B") common stock. The three children of Mr. O'Neal, II received 6,058 shares of O'Neal Steel nonvoting ("Class A") stock. The four children of Elizabeth Shannon each received 4,544 shares of Class A stock. On the same date, November 3, 1987, Mr. O'Neal made similar gifts of stock to each of his children and grandchildren.[2]

Mr. and Mrs. O'Neal's United States Gift (and Generation-Skipping Transfer) Tax Returns (Forms 709) ("Gift Tax Returns") were filed timely. *See* plaintiffs' exhibit 4. The Gift Tax Returns reported that the non-voting stock was worth $54.00 per share and the voting stock was worth $61.00 per share – the values established under an amended 1951

---

[1] O'Neal Steel is a corporation and family owned company engaged in the steel service/distribution business.

[2] Mr. O'Neal's gifts of stock are the subject of separate litigation and not at issue in the case before this court.

3

Buy-Sell Agreement. Plaintiffs' exhibit 4. $810,186.00 in gift taxes were paid by Mrs. O'Neal with her Gift Tax Return. Plaintiffs' exhibit 4; *see also* plaintiffs' exhibit 3, affidavit of Dilmus R. Richey at 2 ("Richey affidavit").

The valuation of the stock was a source of great dispute between the parties. That valuation was based on the option price at which Mrs. O'Neal could sell the stock. On June 28, 1951, the shareholders of O'Neal Steel adopted buy-sell restrictions that were incorporated into the company's Bylaws at § 17 (later changed to § 23). The 1951 Buy-Sell Agreement gave a right of first refusal to certain O'Neal family members and bound all stock in the company "by whomsoever held." As amended from time to time, the buy-sell restrictions have continued as part of the company's Bylaws.

On November 24, 1976, the Class A stock was valued by the company and its directors using prior appraisal reports and other data. This valuation was the basis for an amendment to the 1951 Buy-Sell Agreement on November 24, 1976, and a more detailed amendment on December 10, 1976, setting the option prices at $54.00 per share for Class A stock and $61.00 per share for Class B stock. The December 10, 1976 amendment also extended the rights and obligations under the 1951 Buy-Sell Agreement to additional members of the O'Neal family. *See* plaintiffs' exhibit 4; defendant's exhibit 9.

The 1951 Buy-Sell Agreement, as amended, provides that the option price for each share of stock may be amended and changed only with the consent of the holders of seventy-five percent of the outstanding shares of stock affected thereby and that such consent had to

4

be evidenced by an amendment to the 1951 Buy-Sell Agreement signed by the stockholders so consenting. Defendant's exhibit 5.

Prior to the 1987 gifts, Mrs. O'Neal owned 21.2% of the Class A stock and 17% of the Class B stock, Mr. O'Neal owned 24.6% of the class A stock and 15.7% of the Class B stock.[3] After their 1987 gifts, neither Mr. or Mrs. O'Neal held any stock in O'Neal Steel. On the same date as the transfer of stock, the donees (the children and grandchildren of the O'Neals) entered into a Supplemental Stock Purchase Agreement. The agreement stated that each of the donees agreed to contribute, on a *pro rata* basis, toward the payment of any transferee gift tax liability imposed upon any one of them pursuant to the Internal Revenue Code. *See* defendant's exhibit 12, Supplemental Stock Purchase Agreement at § 7 ("Contribution with Respect to Transferee Liability").[4] Also on November 3, 1987, Mr. and Mrs. O'Neal, as donors, and Emmet O'Neal, II, as escrow agent, entered into an Escrow Agreement whereby Emmet O'Neal, II, as escrow agent, received the shares of stock from Mr. and Mrs. O'Neal, duly endorsed for transfer to the donees, to hold until such time as each of the donees signed the Consent and Supplemental Stock Purchase Agreement. Defendant's exhibit 13. The donees then received the stock certificates conveying ownership

---

[3]Hence, neither individually nor together did Mr. and Mrs. O'Neal own enough of either class of stock to change the option prices or otherwise alter the terms of the 1951 Buy-Sell Agreement.

[4]The court notes that no evidence supports a finding that the parties to the agreement entered it with the intention of making the IRS a third-party beneficiary of that agreement.

5

of the stock.  As with all stock certificates of O'Neal Steel, the certificates in question

contained the following legend on their face:

> transferable on the books of the Corporation by the holder hereof in person or
> by duly authorized attorney, on surrender of this certificate, properly endorsed,
> subject, however, to the restrictions referred to on the reverse hereof.  The
> Corporation will furnish without charge to each stockholder who so requests,
> the designations, preferences and relative, participating, optional or other
> special rights of each class of stock or series thereof and the qualifications,
> limitations or restrictions of such preferences and/or rights.

The back of the stock certificate bore the following legend:

> The shares of stock evidenced by this certificate are held and may be
> transferred only subject to the terms, provisions and options contained in an
> agreement dated June 28, 1951, as amended, and as recorded in Section 17 of
> the By-Laws of the Corporation, as amended.

Defendant's exhibit 14.  On or about April 15, 1988, Mr. and Mrs. O'Neal filed separate

Forms 709, "United States Gift (and Generation-Skipping Transfer) Tax Returns" for the

calendar year 1987, with the Internal Revenue Service ("IRS").  On the 1987 Gift Tax

Returns, Mr. and Mrs. O'Neal reported the gifts of O'Neal Steel stock made to each donee,

at the value at which the stock could be optioned for under the 1951 Buy-Sell Agreement,

as amended by the 1976 revaluation.  Plaintiffs' exhibit 4; defendant's exhibits 5 and 9.

Thus, the gifts of the O'Neal Steel common stock were valued at $54.00 per share for the

Class A stock and $61.00 per share for the Class B stock.  Attached to the Gift Tax Returns

were copies of the 1951 Buy-Sell Agreement, with the amendments in effect at the time the

gifts were made, and copies of the financial statements of O'Neal Steel.

6

When Mrs. O'Neal filed her 1987 Gift Tax Returns, she paid the gifts taxes shown on those returns. Mrs. O'Neal paid a total of $810,186.00 with her 1987 Gift Tax Returns. Plaintiffs' exhibit 4. Mr. O'Neal's Gift Tax return reflected a similar amount of taxes paid. Defendant's exhibit 4.

After Mr. O'Neal died on August 7, 1988, Mr. O'Neal's estate, through his personal representatives,[5] filed a Form 706, "United States Estate (and Generation-Skipping Transfer) Tax Return" ("Mr. O'Neal's Estate Tax Return") with the IRS, showing a federal estate tax due in the amount of $1,632,128.00. O'Neal affidavit at 4; Richey affidavit at 2. This amount was paid as estate taxes.[6] The Internal Revenue Service ("IRS") selected Mr. O'Neal's estate tax return for audit (the "first audit"), sometime before August 1, 1989, but apparently did not assign it to an examining agent until July, 1990. O'Neal affidavit at 4; Transcript of September 2, 1999 hearing at 57 ("Hearing transcript"). During that audit, an examination of Mr. and Mrs. O'Neal's 1987 Gift Tax Returns was commenced.

This examination was begun by Suzanne Paulson in or about July 1990. Hearing transcript at 57. Pursuant to this examination, Ms. Paulson requested, amongst other

---

[5]On August 10, 1988, Letters Testamentary, as Personal Representatives of the Estate of Kirkman O'Neal, were granted to Elizabeth Paramore O'Neal, Elizabeth Shannon and Emmet O'Neal, II by the Probate Court. Thereafter, and after Mrs. O'Neal's death, the Probate Court ordered that the Letters Testamentary be amended and reissued to Elizabeth Shannon, Emmet O'Neal, II and Emmet O'Neal, III. Defendant's exhibit 15.

[6]This payment is the subject of a separate refund suit, styled *Estate of Kirkman O'Neal, et al., v. United States*, Case No:. CV-94-PT-2493-S (N.D.Ala.). This case is still pending.

documents, copies of the Gift Tax Returns, the 1951 Buy-Sell agreement upon which the value of the Company stock was based, the Company's stock ownership records, details of any dispositions of the Company stock, a description of the Company's business, copies of the Company's corporate tax returns, and information on the payment by Mr. and Mrs. O'Neal of their 1987 gift taxes. O'Neal affidavit at 5. Mr. O'Neal's executors furnished this information to the IRS in advance of April 15, 1991 which was the last day upon which the IRS could have made an assessment of additional gift or generation-skipping transfer tax against Mr. or Mrs. O'Neal based on their 1987 gifts.[7] Richey affidavit at 2.

The period of limitations for assessing gift taxes against the O'Neals was April 15, 1991. At no point prior to the April 15, 1991 expiration of the statute of limitations did the IRS assert that either Mr. or Mrs. O'Neal had failed to pay all gift or generation-skipping transfer tax owing with respect to the 1987 gifts or that they had any remaining tax liability for the making of these gifts. Richey affidavit at 3. Additionally, at no point prior to April 15, 1991 did the IRS request an extension of the statute of limitations to assess any gift (and generation skipping transfer) tax that may have been due on the 1987 gifts. Therefore, when the statute of limitations expired on April 15, 1991, the IRS was barred from thereafter collecting any additional gift (or generation skipping transfer) tax from the O'Neals.

---

[7]26 U.S.C. § 6501 provides a 3-year period within which the IRS can assess additional gift tax against a donor.

In September, 1991, the IRS examining agent prepared a memorandum requesting that an expert valuation study be performed on the O'Neal Steel stock. Thereafter, the IRS engaged such an expert to appraise the value of the stock. On February 6, 1992, this expert conveyed his opinion to the IRS that, on the date of transfer, November 3, 1987, the Class A stock had a value of $375.00 per share and the Class B stock had a value of $415.00 per share.

In November, 1991, the donees were advised of the IRS's intentions to assert a transferee liability against them based on the IRS's revaluation of the stock. On April 13, 1992, the IRS issued statutory notices of liability (the "Notices") to the donees under 26 U.S.C. § 6901 asserting that the donees were liable for an additional $9,407,226.00 in gift taxes, generation-skipping transfer taxes and penalties under 26 U.S.C. § 6660 with respect to the 1987 Gifts.[8] Plaintiffs' exhibits 10-18; defendant's exhibit 17. Each Notice stated it was for "the transfer tax liability (gift tax and generation-skipping transfer tax) of Elizabeth P. O'Neal ...." Plaintiffs' exhibits 10-18, defendant's exhibit 17. Similar notices of liability were also issued with respect to Mr. O'Neal's 1987 gift taxes. Richey affidavit at 7.

On May 8, 1992, the grandchildren donees made partial payments to the IRS on the asserted transferee liabilities in the total amount of $4,244,994.00.[9] Defendant's exhibit 19.

---

[8]The court notes that these notices were sent by the IRS two days before the statute of limitations ran for the IRS to assert donee liability.

[9]The plaintiffs allege that on May 8, 1992, the grandchildren donees obtained the funds to make this payment to the IRS by borrowing from O'Neal Steel in an amount equal to $54.00 per

Also on May 8, 1992, the donees made payments to the IRS for their asserted transferee liability in the amount of $15,770.00. A similar amount was also paid for the gift of stock received from Mr. O'Neal. On the same date, the children donees filed separate Forms 843, "Claim for Refund and Request for Abatement," requesting a refund of the donee/transferee payment made by them. These refund claims were disallowed by the IRS on May 21, 1992.

On June 24, 1992, the donees filed contingent claims in Probate Court against Mr. O'Neal's estate, seeking reimbursement for any gift taxes, generation skipping transfer taxes, additions to tax and interest that they might have been required to pay for 1987. Defendant's exhibit 21. No claims were filed against Mrs. O'Neal, who was still living at that time.

On July 9, 1992, the grandchildren donees timely filed a proceeding in the United States Tax Court, seeking a redetermination of the transferee gift (and generation-skipping transfer) tax liability asserted against them for the 1987 calendar year. *O'Neal v. Comm'r*, 102 T.C. 666 (the consolidated case of each grandchild's petition). In that case, the grandchildren raised three issues: (1) whether the donees could be held liable at law as donees/transferees for gift (and generation-skipping transfer) taxes when the IRS did not assert a deficiency against the donors before the statute of limitations expired; (2) whether the notices of the donee/transferee liability were properly sent to the donees in accordance with the requirements of 26 U.S.C. § 6901; and (3) whether the IRS was precluded by 26

---

share, for each share of Class A stock given to them by Mr. and Mrs. O'Neal.

U.S.C. § 2504(c) from challenging the value used by Mr. and Mrs. O'Neal in reporting the 1987 stock gifts, when the period of limitations for assessment against the donees had expired. *See O'Neal*, 102 T.C. at 668.

On April 4, 1994, Emmet O'Neal, II filed a refund action in the United States District Court for the Northern District of Alabama seeking a refund of the transferee gift (and generation-skipping transfer) tax liability previously paid by him to the IRS on May 8, 1992. *Emmet O'Neal, II v. United States*, Case No.: CV-94-PT-784-S (N.D.Ala). On April 11, 1992, Elizabeth Shannon filed a similar suit. *Elizabeth Shannon v. United States*, Case No.: CV-94-G-0858-S (N.D.Ala.). O'Neal affidavit at 9. These actions were stayed pending the resolution of the *O'Neal* litigation in the Tax Court.

On April 28, 1998, the Tax Court ruled against the donees, holding that: (1) the grandchildren donees can be held personally liable for the transferee gift (and generation-skipping transfer) tax under 26 U.S.C. § 6324(b), without any requirement that the IRS must first assert the liability against the donor; (2) the IRS properly sent the notices of liability to the donees, in accordance with the requirements of 26 U.S.C. § 6901; and (3) the IRS was not precluded by 26 U.S.C. § 2504(c) from challenging the value used by Mr. and Mrs. O'Neal in reporting the 1987 gifts made to the donees. *See O'Neal*, 102 T.C. at 682-683, submitted as defendant's exhibit 2.

Mrs. O'Neal died on July 23, 1994. O'Neal affidavit at 10. Emmet O'Neal, II, Elizabeth O'Neal White Shannon, and Emmet O'Neal, III, were appointed to serve as

personal representatives of Mrs. O'Neal's estate. O'Neal affidavit at 10; *see also* defendant's

exhibit 22. On August 24, 1994, the donees filed contingent claims, in Probate Court, against

Mrs. O'Neal's estate, seeking reimbursement for any gift taxes, generation-skipping transfer

taxes, additions to tax and interest that they, as donees/transferees of Mrs. O'Neal, might

have been required to pay for 1987. Plaintiffs' exhibits 21-29. Due to their conflict of

interest, on September 8, 1994, the personal representatives filed a petition in the Probate

Court seeking the appointment of an administrator *ad litem* of Mrs. O'Neal's estate to

approve or contest the donees' claims. Plaintiffs' exhibit 30, defendant's exhibit 22. The

petition was granted, and Frank M. Bainbridge was appointed to serve as administrator *ad

litem.* Plaintiffs' exhibits 31-32; defendant's exhibits 23 and 24. At the same time, the

Probate Court issued an order that the United States be notified of the filing of the donees'

petition. Defendant's exhibit 23. Although the United States received notice of the action,

it never sought to intervene.

On November 22, 1994, the administrator *ad litem* filed a Notice of Dispute on

Claims, Answer to Claims and Application for Hearing pursuant to § 43-2-354 Code of

Alabama. Plaintiffs' exhibit 36; defendant's exhibit 25. Pursuant to orders of the Probate

Court, all petitions, notices, answers, briefs, and orders were served on the government.

O'Neal affidavit at 12.

The hearing on the dispute of the claims was held January 31, 1995. Plaintiffs'

exhibit 37; defendant's exhibit 26. Ms. Suzanne Paulson, the IRS examining agent, was

present for the proceedings, but only as a spectator and not as counsel for the United States.[10]

Defendant's exhibit 26, at 5. On February 13, 1995, the Probate Court dismissed the donees'

claims without prejudice, on the ground that they were premature because no judgment of

transferee liability had been entered against them in the *O'Neal* Tax Court litigation.

Defendant's exhibits 27 and 28.

Mrs. O'Neal's United States Estate (and Generation-Skipping Transfer) Tax Return

(Form 706) was timely filed on April 24, 1995. Plaintiffs' exhibit 6. The return deducted

$9,407,226.00 on Schedule K with respect to "[c]laims for reimbursement of transfer gift tax

liability by donees of 1987 gifts." Defendant's exhibit 1, Schedule K. The deduction was

based upon the amount then claimed by the IRS to be owed as Mrs. O'Neal's gift taxes

(valuing the stock at $375.00 and $415.00 per share). Richey affidavit at 5.

On April 28, 1995, the IRS and grandchildren donees settled the stock valuation issue

pending in the *O'Neal* Tax Court litigation by increasing the value of the non-voting (Class

A) stock from $54.00 as reported on the gift tax return to $77.00 per share. Defendant's

exhibit 29. The voting (Class B) stock shares were similarly increased from $61.00 per share

to $82.00 per share. Defendant's exhibit 29. By stipulation filed in September, 1995, the

IRS and grandchildren donees advised the Tax Court that they had settled the valuation issue.

---

[10]The United States claims that Ms. Paulson was not given authority to appear at the probate hearing as representing the United States. Nevertheless, this court finds that the United States was aware of the proceedings in Probate Court, having been duly notified and sending the IRS examining agent to watch.

Applying the new values, the amount of additional gift tax due from Mrs. O'Neal was $487,814.00 together with interest of $3,527.03 and no penalties.[11] Richey affidavit at 3-4. A similar liability was found to apply to the gifts of Mr. O'Neal. Thus, in September, 1995, the only remaining issue in the Tax Court was the amount of interest to be paid by the grandchildren donees on their transferee gift tax liability. Defendant's exhibit 19.[12]

The Probate Court entered an Opinion and Order on March 14, 1996, holding the donees' claims valid and enforceable and finding that they were entitled to recover the taxes they paid as a result of Mrs. O'Neal's gifts of stock, together with related interest. Plaintiffs' exhibit 39 at 9; defendant's exhibit 30 and 31. A copy of the Opinion and Order was served on the Government. Plaintiffs' exhibit 39 at 10. On March 22, 1996, each of the donees filed affidavits with the Probate Court, stating the amount of their individual gift tax liabilities paid to the IRS from the 1987 gifts of stock from Mrs. O'Neal, as well as the amount of interest thereon, through March 24, 1996. Plaintiff's exhibits 40-48. The donees' total claim was for $563,314.20. On March 25, 1996, pursuant to the Probate Court order,

---

[11]Because of the substantially lesser values agreed to by the parties for the stock, the generation-skipping transfer tax provisions no longer applied to the gifts of stock.

[12]The revaluation of the stock pursuant to the settlement agreement between the parties resulted in overpayments by the donees – three of them had overpayments of $245,336.19, and four of them had overpayments of $184,023.10. Defendant's exhibit 37.

14

Mrs. O'Neal's estate paid the donees a total of $658,123.44.[13] This is $95,709.24 more than the donees claimed from the estate.[14]

On May 17, 1996, the personal representative of Mrs. O'Neal's estate filed an amended Form 706, "United States Estate (and Generation Skipping Transfer) Tax Return" reducing the deduction for the donees claims from $9,407,226.00 to $563,314.00, based upon the settlement with the IRS. Plaintiffs' exhibit 5; defendant's exhibit 33. The amended return also claimed additional deductions and included additional assets in Mrs. O'Neal's gross estate. Concurrently therewith, the estate paid the estate taxes indicated by the amended return. O'Neal affidavit at 15.

On November 6, 1996, the personal representative of Mrs. O'Neal's estate filed a claim for refund of the estate taxes paid with the amended return. Plaintiffs' exhibit 7; defendant's exhibit 35. The Refund Claim requested a refund of estate taxes of $1,883,762.00, plus interest thereon, on the basis that the deduction for the donees' claims originally reported on the first amended Estate Tax Return, $9,407,226.00, was the proper amount to be deducted by the estate for those claims.

---

[13]The sum of the donee's transferee gift tax liabilities of $487,814.00, plus interest of $74,600.20, totals $562,414.20. The defendant alleges that the $900.00 difference between the sum of the liabilities and the claims submitted result from the claims of Emmet O'Neal, II, Kirkman O'Neal and Henry Craft O'Neal each being overstated by $300.00.

[14]The estate payment of $658,123.44, which exceeded the amount claimed, resulted from the estate paying each of the grandchildren a claim of $93,940.13, although four of the grandchildren had claims totaling only $70, 237.83 each. The donees do not claim that the estate should get a $658,123.44 deduction for estate tax purposes, but the amount paid in taxes and interest by the donees of $563,314.00.

The IRS failed to respond to the claim for refund, and plaintiffs filed this lawsuit on August 21, 1997, seeking a refund of federal estate taxes in the amount of $1,883,762.00, plus interest thereon. *See* Complaint.

Mrs. O'Neal's estate tax return was selected for audit (the "second audit") sometime after April 24, 1995, and the second IRS examiner challenged the estate's deduction for the donees' claims. Richey affidavit at 5. The IRS did not address the claim for refund until January 16, 1998, when the IRS issued a statutory notice of deficiency to Mrs. O'Neal's estate, claiming a deficiency of federal estate taxes in the amount of $684,631.00, plus interest, under 26 U.S.C. § 6601. Defendant's exhibit 36. The statutory notice of deficiency disallowed the claim for refund.[15] Defendant's exhibit 36.

On January 26, 1999, the Tax Court entered decisions in each of the seven Tax Court cases specifically identifying the amount of transferee gift tax liability and interest for which each of the O'Neal grandchildren were liable. Defendant's exhibit 37. The decisions found each grandchild's "pro-rata share as a donee/transferee of the assets of Elizabeth P. O'Neal, donor/transferor, for the unpaid gift tax of the donor/transferor for the calendar year 1987" to be as follows:

---

[15]The court notes that the disallowance of the claim for refund was made approximately fourteen months after the claim for refund was filed.

|                              | **Gift Tax** |                 |
| **Grandchild/Petitioner**    | **Liability** | **Interest**    |
| Emmet O'Neal, III            | $81,208.00    | $587.81         |
| Kirkman O'Neal, II           | $81,208.00    | $587.81         |
| Henry Craft O'Neal           | $81,208.00    | $587.81         |
| Elizabeth White Reed         | $60,912.00    | $440.90         |
| Margaret White Head          | $60,912.00    | $440.90         |
| Virginia White Page          | $60,912.00    | $440.90         |
| David H. White, Jr.          | $60,912.00    | $440.90         |

Defendant's exhibit 37. The total liability of the transferees from this ruling of the Tax Court was $491,341.03. Thus, this amount due had been paid in full by the amounts the donees paid the IRS on May 8, 1992. *See* defendant's exhibit 19 and 37.

The issues in the parties' current dispute are (1) whether the estate is entitled to a deduction of $563,314.00, the amount awarded the donees as claims against the estate in probate court; (2) whether attorney fees paid to the law firm of Chamberlain, Hrdlicka, White, Williams & Martin, in the amount of $74,485, are allowable as a deduction to the estate; (3) whether the estate is allowed an interest deduction in the amount of $221,473.00; (4) whether the estate is allowed a deduction for $114,022.23 paid to the Chamberlain firm before Mrs. O'Neal's death by Emmet O'Neal acting under a durable power of attorney; (5) whether the IRS is entitled to revalue the gifts of stock to increase the Adjusted Taxable Gifts for 1987 and thus increase the amount of Gift Tax Payable from the estate.

## II. STANDARD FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 47 U.S.

317, 322 (1986).   The movant can meet this burden by presenting evidence showing there

is no dispute of material fact, or by showing that the nonmoving party has failed to present

evidence in support of some element of his case on which he bears the ultimate burden of

proof. *Id.* at 322-23; *see* FED. R. CIV. P. 56(a) and (b).   Once the moving party has met its

burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . .

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial,' " *Celotex,* 477 U.S.

at 324.   Rule 56(c) mandates the entry of summary judgment against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.

### III. DISCUSSION OF LAW

#### A. Is the estate entitled to a deduction of $563,314.00, the amount awarded the donees in probate court as claims against the estate?

In analyzing federal estate tax issue, the court must be sensitive to the "general

polic[y] of estate tax law, that of taxing the transmission of wealth at death." *Estate of*

*Huntington*, 16 F.3d 462, 465 (1st Cir. 1994) (quoting *United States v. Stapf,* 375 U.S. 118,

134, 84 S.Ct. 248, 258, 11 L.Ed.2d 195 (1963)).  26 U.S.C. § 2053 allows a deduction from

a decedent's gross estate for certain claims. *Huntington*, 16 F.3d at 465 (citations omitted).

18

In pertinent part, 26 U.S.C. § 2053 states that for federal estate tax purposes:

[T]he value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts ... for claims against the estate ... as are allowable by the laws of the jurisdiction ... under which the estate is being administered.

26 U.S.C. § 2053(a)(3). Thus, to be deductible, any claim must be allowable under the laws of the state of Alabama.[16] In addition, only such claims as are enforceable personal obligations of the decedent, at the time of her death, are deductible. Section 20.2053-4, Estate Tax Regs. *See Lindberg v. United States*, 164 F.3d 1312, 1317 (10th Cir.1999), *aff'g* 927 F.Supp. 1401 (D.Colo.1996).[17] Deductible claims arise from transactions that create true debts against the estate. *Huntington*, 16 F.3d at 467-468.

---

[16]For reasons explained below, this court will only examine the question of whether claims, so allowed, are deductible by the estate for purposes of federal estate taxes.

[17]*See also Bank of New York v. United States*, 526 F.2d 1012, 1014-1017 (3d Cir.1975), where the court stated :

When the interests of family members are not divergent but coincide so that the elements of a transaction advance the separate concerns of each, we are unable to find the arm's length bargain mandated by the Code. This Court has adhered to the distinction between family arrangements bargained for at arm's length and family arrangements that reflect a community of interests. Tax advantages are not permitted when an agreement between members of a family could be regarded as a cooperative attempts to make a testamentary disposition rather than as an arm's length bargain.

To effectuate the policy underlying the federal estate tax requires that courts look beneath the surface of transactions to discover the essential character of each transfer. Even where a claim is ultimately satisfied by the operation of law, the courts will determine the nature of the claim for federal tax purposes by examining the particular status of the claimant that enabled him to impose his claim on the estate.

The Probate Court entered a ruling on March 14, 1996 that the donees' claims against Mrs. O'Neal's estate were valid and enforceable.  Thus, the Probate Court had to find that these claims were allowable under the laws of the state of Alabama.  That court stated that the donees were entitled to recover from the estate $487,814.00 in transferee gift tax based on their prior payments to the IRS, plus the interest each incurred in his or her loan from O'Neal Steel to fund the payment of the additional taxes.  Thus, this court must examine whether the Probate Court's ruling was in accordance with law.[18]  The Probate Court entered a finding in this matter that said claims of the donees were allowable against the estate.  The decision of Probate Court was never appealed to the Alabama Supreme Court, the highest court of this state, which is the court authorized to hear Probate Court appeals.  *See* § 12-22-4, Code of Alabama 1975.[19]

In *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), the Supreme Court set forth the general rule regarding how much deference is given to lower state court decisions, stating "state law as announced by the highest court of the State is to be followed."  *Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. at 1782.  The Court continued that "[i]f there be no decision by that court then federal authorities must apply

---

[18]Not surprisingly, the IRS argues that it was against applicable law, while the donees argue that the Probate Court had authority to allow the claims for refunds.  The court notes that both sides have supplied the court with law which supports each argument.

[19]*See also* § 43-2-354, Code of Alabama 1975 ("If a judgment on a claim is rendered by a probate court, either party may, within 30 days after the rendition of the judgment, appeal to the circuit court of the county in which the administration of said estate is pending...").

what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court." *Id*. However, *Bosch* also states that a state trial court decision having federal tax implications does not automatically bind the government if the government was not a party to the proceeding.[20] *Bosch*, 387 U.S. at 465, 87 S.Ct. at 1782.

Other courts have stated that "an order of a state [c]ourt that adversely affects the tax right of the United States ... does not foreclose the federal courts from [independently] determining the tax liabilities." *See e.g. Estate of Trompeter v. Commissioner*, T.C. Memo 1998-35 (citations omitted). In the facts before this court, the evidence is that Ms. Paulson, the IRS examining agent, was present at the probate proceedings, but not a participant. However, the United States was notified of all the proceedings.

What it means to be "sitting as a state court" and to give "proper regard" to a lower state-court decision was explained in *Estate of Goree v. Commissioner*, T.C. Memo. 1994-331. In *Goree*, the Tax Court held that it would review the decision of the state court using the same standard of review used by the state appellate courts when reviewing findings of fact made by the state's lower courts. *Id*. The Tax Court further explained that "[u]nder

---

[20]This principle from *Bosch* applies to the deductibility of items under 26 U.S.C. §2053. *See e.g. United States v. White*, 853 F.2d 107, 113-115 (2nd Cir. 1988).

Alabama law, a reviewing court must affirm the trial court unless its findings are 'plainly and palpably erroneous.'" *Id.*[21]

*Goree* is in agreement with *Estate of Salter v. Commissioner,* 545 F.2d 494 (5th Cir. 1977). In *Salter,* the Court held that "[i]n the absence of a case specifically on point, the best measure of the 'regard,' we think, would be to determine, from existing precedent, in our best judgment, whether the [state] Supreme Court ... would have affirmed the Chancellor's decree had there been an appeal." *Id.* at 500. The proper weight to be given to a decision of the Probate Court was also addressed in *Miglionico v. United States,* 323 F.Supp. 197 (N.D.Ala.1971). There, the Hon. Sam Pointer noted that "[t]he finding and decree of [the] state court, while not conclusive, is entitled nevertheless to appropriate recognition and weight by this Court since it did indeed determine property rights between parties with adverse interests and was not collusively brought or maintained." *Id.* at 200. In *Miglionico,* the court recognized the validity of the state court's decision even though the Alabama Supreme Court had not ruled on the case. Judge Pointer followed the state court's decision because the ruling of the Probate Court was supported by the evidence presented. In the facts

---

[21]*See also Leslie v, Pine Crest Homes, Inc.*, 388 So.2d 178, 181 (Ala.1980) (Where the court makes its findings of fact after hearing conflicting evidence, every presumption is indulged in favor of the court's findings of fact and those findings will not be disturbed unless palpable wrong); *Lankford v. Hollingsworth*, 219 So.2d 387, 390 (Ala.1969) (The finding of a probate court, based on the examination of witnesses *ore tenus,* is presumed to be correct and will not be disturbed unless palpably erroneous).

before this court, the Alabama Supreme Court has not ruled, because no party has challenged

the decision of Probate Court in the court with appellate authority over that decision.[22]

In addition to the cases discussed *supra*, the effect of a state court decree is also

addressed in Treasury Regulation § 20.2053-1(b)(2).  It provides as follows:

> The decision of a local court as to the amount and allowability under
> local law of a claim or administration expense will ordinarily be accepted if
> the court passes upon the facts upon which deductibility depends .... However,
> the decree will not necessarily be accepted even though it purports to decide
> the facts upon which deductibility depends.  It must appear that the court
> actually passed upon the merits of the claim.  This will be presumed in all
> cases of an active and genuine contest.

*See also Estate of Trompeter*, T.C. Memo. 1998-35.  The plaintiffs assert that merits of the

claims asserted by the donees were considered by the Probate Court.  Clearly the Probate

Court passed upon the facts upon which the deductibility depended as well as the merits of

the claim.  Furthermore, the Probate Court appointed a *guardian ad litem* to represent the

interests of the estate against the donees claims.  Witnesses were examined and exhibits were

---

[22]     In the hearing held in this matter before this court, the defendant argued that:
The lady was there, Ms. Polson (sic) was there, the examining agent for Mr. O'Neal's
estate tax return was there.  We make no bones about that.  But the United States was
not represented in that particular case.  We were not a party.  We do not tend to get
into family disputes.  There was no federal estate tax issue.  Although I do agree, if
the Court reads the record out of about seventy-two pages, sixty-five of it looks like
it could have been an estate tax deduction case.

But nevertheless, we do not get involved in those situations.

Transcript of September 2, 1999 hearing at 25 ("transcript").  Because the United States
does not get involved in "family disputes" of this nature, the Alabama Supreme Court has
never had the opportunity to rule on this matter.

received into evidence.  After several months of consideration, the judge of the Probate Court wrote a thorough and reasoned opinion.  There is no requirement that the proceeding be so adversarial as to involve personal animosity between the parties.  *Miglionico*, 323 F. Supp. at 200. As such, this court cannot say the probate proceedings were not an "active and genuine contest."

The defendant disagrees with the Probate Court's decision on the basis that the donees' transferee liability under 26 U.S.C. § 6324(b) is separate and independent from Mrs. O'Neal's liability under 26 U.S.C. § 2502(c).  The defendant also alleges "certain critical facts ... were either not presented to the Court accurately, or at all."  Defendant's brief at 48. While the Court finds the critical facts are Mrs. O'Neal made gifts, liability for the taxes on those gifts was imposed on Mrs. O'Neal, and through defendant's actions (or rather, inaction until the statute of limitations had run as against the donors), the donees were forced to pay the additional taxes, the court finds that the Probate Court should have had an opportunity to consider the Stock Supplemental Agreement and Escrow Agreement.[23]  *See* Hearing transcript at 5, 25-26.  However, the court also finds that under the Stock Supplemental Agreement, the donees agreed to pay any additional gift taxes and the donees have clearly done so.  Whether the payment of the same was chargeable as a claim against the estate is

---

[23]Under the Stock Supplemental Agreement, the donees agreed to share, on a *pro rata* basis, any transferee liability asserted against them on the basis of the stock transfer.

not covered by that agreement. As such, this court cannot state that but for that omission, the decision of the Probate Court would have been different.[24]

While the government also argues that the Probate Court did not have the critical fact of the timing of the filing claims against the estate to seek reimbursement of the liability, this court does not agree. *See* Hearing transcript at 29-30. Clearly, the Probate Court could ascertain from the information in front of it that additional gift taxes were assessed before Mrs. O'Neal's death, that Mrs. O'Neal died, that the donees paid the additional gift taxes, and that the donees wanted the estate to reimburse them.

Having considered all of the evidence, arguments and applicable law, this court cannot find that the Probate Court's decision to allow the claim against the estate for reimbursement was plainly and palpably wrong. While both parties have speculated on the effect of filing claims against Mrs. O'Neal before her death for the additional gift taxes, that was not done. Hearing transcript at 30-31, 48-49. Perhaps it would have prevented the myriad of subsequent litigation, or disposed of the defendant's claims altogether. Regardless, it was not done and hence is not relevant to this court's determination of the validity of the Probate Court's Order. This court finds that the state Supreme Court would have affirmed the learned Probate Judge's decision had there been an appeal. *See Estate of Salter* 545 F.2d at 500. In consideration of the foregoing, this court finds that the remaining issue before this

---

[24]This court also notes that no evidence supports a finding that the IRS was intended to be a third party beneficiary of the Stock Supplemental Agreement.

court is whether the claims, as allowed against the estate, should be deductible for federal estate tax purposes. This court finds further support for its decision from an examination of the rules for gift taxes and transferee liability, as summarized below.

26 U.S.C. § 2501(a) imposes a tax on the transfer of property by gift.[25]  Section 2502(c) imposes the obligation to pay the gift tax on the donor, stating "The [gift] tax imposed by § 2501 shall be paid by the donor." This was done by Mrs. O'Neal. The donor must file a gift tax return and pay the tax on or before April 15 of the year following that in which the gift was made. 26 U.S.C. §§ 6019, 6075(b) and 6151(a). Any gift tax must be assessed against the donor within three years after the gift tax return is filed. 26 U.S.C. § 6501. Treasury Regulation § 25.2502-2 interprets 26 U.S.C. § 2502(c) as follows:

> **Donor primarily liable for tax.** Section 2502(d)[26] provides that the donor shall pay the tax. If the donor dies before the tax is paid the amount of the tax is a debt due the United States from the decedent's estate and his executor or administrator is responsible for its payment out of the estate.

Troubling this court is the fact that the donor, Mrs. O'Neal, paid all the taxes due on the gifts of stock at the time she made them. Clearly, if Mrs. O'Neal had paid nothing, the tax would be payable out of her estate. The government argues that Mrs. O'Neal singly, or she and her husband jointly, did not own enough of the O'Neal Steel stock to change the

---

[25] While a separate and additional tax on a generation skipping transfers is imposed by 26 U.S.C. § 2601, the court notes that the settlement reached in the *O'Neal* Tax Court litigation resulted in elimination of any transferee liability for generation-skipping transfer taxes.

[26] Treas. Reg. § 25.2502-2 does not reflect the redesignation of § 2502(d) as § 2502(c) by P.L. 97-34.

option prices from the 1951 Buy-Sell Agreement. As such, the stock price used to determine the gift tax paid was the price at which Mrs. O'Neal would have had to sell her stock if she chose to do so rather than give it away. As such, Mrs. O'Neal used the only market value available to her at the time the gift tax was paid.

The first reference to a liability being placed on a donee for gift tax is found in 26 U.S.C. § 6324(b), which is located in Chapter 64 of the Internal Revenue Code and entitled "Collection" and in the subchapter entitled "Lien for Taxes." 26 U.S.C. § 6324(b) provides in pertinent part as follows:

**(b)   Lien for gift tax.**

Except as otherwise provided in subsection (c), unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift.

This section speaks to taxes "not paid when due." However, that is not the situation before this court. No allegation is made that Mrs. O'Neal improperly calculated the taxes due on the gifts she made -- rather, after the gifts were given, the IRS determined that a different, higher, and previously nonexistent value should have been attached to those gifts even though the shares did not have that value to Mrs. O'Neal at the time the gifts were made.

Under 26 U.S.C. § 6324(b), the donee is liable as a transferee at law, regardless of whether the gift tax deficiencies were assessed against the donor. Thus, if the donor had failed to pay the gift taxes when due, the donee is rendered liable as a transferee at law for such taxes to the extent of the value of the gift. *Mississippi Valley Trust Co., v. Commissioner*, 147 F.2d 186 (8th Cir.1945). A donee's liability under 26 U.S.C. § 6324(b) for unpaid gift taxes exists separate and apart from the donor's liability for unpaid gift taxes. However, that liability only arises if the tax is not paid when due.[27]

While the government argues that the Stock Supplemental Agreement should have been presented to Probate Court because it demonstrates the decedent's intent not to pay any further taxes which may have been due, this court finds this is wholly different from the question of whether Mrs. O'Neal would have paid the additional taxes due if the stock had been revalued during the three years for which she was liable for the difference.

Treasury Regulation § 25.2511-2 provides:

**Cessation of donor's dominion and control.** (a) The gift tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer, nor is it conditioned upon ability to identify the donee at the time of the transfer. On the contrary, the tax is a primary and personal liability of the

---

[27]The court notes the defendant's argument that the additional gift tax could not have been a liability of Mrs. O'Neal because she could not change the value of the shares. As such, she had to pay the full amount of gift tax due on the gift at the time she filed her gift tax return. But for the defendant to then argue that not all the gift tax due was paid and thus the transferees are liable and that the additional value of the gifts must be added back into her estate is tautological. Furthermore, this resolution results in a donor never being able to be sure that he or she has paid the gift tax in full, no matter how hard he or she tries to do so. *See* Hearing transcript at 38.

donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable.

Moreover, payment or discharge of the transferor's liability extinguishes the liability of the transferees. *Quirk v. Commissioner*, 15 T.C. 709 (1950), *aff'd*, 196 F.2d 1022 (5th Cir. 1952) (payment of deficiency eliminated any liability of transferee); *Holmes v. Commissioner*, 47 T.C. 622, 627 (1967) (stating general principle that payment of transferor's deficiency extinguishes transferee's liability); *Estate of Stein v. Commissioner*, 40 T.C. 275 (1963) (payment of full amount of deficiency extinguishes transferee liability). The IRS acknowledges this principle. Rev. Rul. 72-436, 1972-2 C.B. 643.

The donees' liabilities did not arise until the IRS revalued the stock in 1991, when the IRS could no longer collect additional gift taxes from Mrs. O'Neal. Defendant submitted the stipulations from Tax Court case *Henry Craft O'Neal v. Commissioner*, Docket No. 16145-92, in support of its motion for summary judgment and in opposition to plaintiff's motion for summary judgment. Defendant stipulated that it was the duty of the examining agent to determine the gift taxes with respect to the donor and to assert deficiencies and the like within the applicable statute of limitations period. *See* defendant's exhibit 3. There would have been no dispute as to the deductibility of the gift taxes had defendant fulfilled this duty. Only because of the IRS's failure to act timely is the defendant able to argue that payment of the taxes is not deductible. Assuming that the IRS had asserted the additional $487,814.00 gift tax liability against Mrs. O'Neal in a timely fashion, Mrs. O'Neal's estate would have

29

been reduced by the gift tax payment and the estate tax due would have been correspondingly reduced.

The IRS, however, failed to assert the additional gift tax liability against Mrs. O'Neal but instead asserted a transferee liability against the donees. Unless the amount of the transferee liability is allowed as a valid claim against Mrs. O'Neal's estate, the estate will not get an estate tax deduction for the gift tax paid or owed, and the government will receive estate taxes on an additional $487,814.00 of value in Mrs. O'Neal's estate due to its own lack of diligence. By the government's failure to timely assert the liability against Mrs. O'Neal, it argues it may collect both the gift tax and the estate tax on the amount of the gift tax.

The IRS cannot be put in a better position due to its dilatory conduct, by asserting a tax liability on the donees without the corresponding deduction for the Probate Court ordered reimbursement of the gift taxes paid by the donees. Mrs. O'Neal's estate is entitled to a deduction for the amounts of restitution paid to the donees. By limiting the deduction to the amount of the claims actually paid, the parties are placed in the same position they would have been in had defendant timely assessed the taxes against Mrs. O'Neal and assessed them in the amount that the parties ultimately compromised upon as the correct amount. As such, this court cannot find that the decision of the Probate Court was plainly and palpably wrong. This court finds that allowing the donees to be reimbursed by the estate for the  additional

30

gift taxes they paid places the parties in the positions they would have been in had the government not been dilatory in its duties.[28]

The court finds that this is the conclusion mandated when Treasury Regulation § 25.2502-2, stating that if the donor dies before the tax is paid the amount of the tax is a debt due the United States from the decedent's estate and his executor or administrator is responsible for its payment out of the estate, is read *in pari materia* with 26 U.S.C. § 2502 (c), stating that the tax shall be paid by the donor. Furthermore, while 26 U.S.C. § 6901 allows the IRS an additional year to collect gift taxes from donees after the statute of limitations has expired against donors, nowhere does this statute regulate what may be deducted from a decedent's estate. Thus, this court concludes that if the additional tax would have been borne by the donor or her estate had the government made a timely assessment, the same should be allowable as a claim against the estate by the donees.[29]

---

[28]The court notes that this situation can only arise when a gift is made, gift taxes paid, the donor dies, the gift is revalued and additional taxes are due and more than three years have passed since the original filing of the gift tax form.

[29]*See also* Chief Counsel Advisory 199926019 (July 2, 1999). The Chief Counsel stated as follows with regard to a net gift:

As discussed above, with respect to the gift tax imposed as a result of a transfer under § 2519, § 2207A(b) statutorily shifts the burden, but not the liability, for paying the gift tax to the donee. In reimbursing the donor for the gift tax paid pursuant to the statute, the donee provides consideration for the gift. The donee's payment inures to the benefit of the donor because it reimburses the donor for gift tax that the donor was liable for and would otherwise be required to pay out of the donor's own funds. See Rev. Rul. 75-72.

Furthermore, the court finds that if the estate was not allowed to be reduced through a deduction of the additional gift taxes, the IRS would have the ability, by deciding when to or not to assert a gift tax deficiency, to determine the distribution of wealth among a family, an area traditionally left to wills and probate court. The court finds *Fidelity Union Trust Co. v. Anthony*, 81 A.2d 191 (N.J.Super.Ch.1951), *aff'd* 86 A.2d. 594 (N.J. Super.A.D. 1952) to the contrary, to be unconvincing.[30]

As previously discussed, the obligation to pay the gift tax is imposed on the donor. 26 U.S.C. § 2502(c). The regulations state that the donor is primarily liable for the gift tax. Treas. Reg. § 25.2502-2. The donee is liable only if the gift tax is not paid by the donor when due and then only to the extent of the value of the gift received. 26 U.S.C. § 6324(b). Section 25.2502-2 of the accompanying Code of Federal Regulations states, in relevant part: "Section 2502(d) [now (c)] provides that the donor shall pay the tax. If the donor dies before the tax is paid the amount of the tax is a debt due the United States from the decedent's estate and his executor or administrator is responsible for its payment out of the estate." (26 C.F.R., § 25.2502-2.)

> The primary gift tax liability under both California and federal statutes thus rests with the donor or the donor's estate. (*Estate of Cummings* (1965) 236 Cal. App. 2d 659, 666, 46 Cal. Rptr. 491 (Cummings I).) This is so because the gift tax is not imposed upon the receipt of property by the donee; rather, it is an excise upon the donor's act of making the transfer. . . .

---

[30]The defendant argues before this court that the reason it did not intervene in Probate Court was because "we do not tend to get into family disputes." Hearing transcript at 25. Yet that is exactly the effect of the defendant's argument to this court.

Because the gift tax is primarily chargeable to the donor or to the donor's estate, the most appropriate interpretation of the statutory scheme is that the donees are responsible for payment of the tax only if it is not paid by the party primarily liable -- the donor. As concluded in *Sheaffer's Estate, supra*, 313 F.2d 738, 741: "An examination of the controlling gift tax statutes and the cases interpreting them leads us to the inescapable conclusion that the liability for payment of the tax is in the first instance that of the donor, and the donee does not become liable unless the donor fails to make payment on the tax by the 15th day of March following the close of the calendar year. *See Mississippi Valley Trust Co. v. Commissioner,* 8 Cir., 147 F.2d 186 (1945), and *Fletcher Trust Co. v. Commissioner*, 7 Cir., 141 F.2d 36 (1944), *cert. denied*, 323 U.S. 711, 65 S.Ct. 36, 89 L.Ed. 572 (1944)."

*Estate of Tye On Lock,* 122 Cal.App.3d 892, 176 Cal.Rptr. 358, 362-63 (Cal.Ct.App. 1981).

The decision of the U. S. Court of Claims in *Murray v. United States*, 687 F.2d 386 (Ct. Cl.1982), is also instructive.[31] In *Murray*, the donor made a gift and died without paying the gift tax. The only assets in the donor's estate with which to pay the gift tax were those passing to the marital trust. The IRS contended that the marital deduction had to be reduced by the gift tax due. The executor paid the gift tax and sued for a refund. The court denied the refund, saying:

> Plaintiffs maintain that since Oliver had failed to pay his gift taxes when due, upon his death liability for payment shifted to the donees of the

---

[31]The Government also argues that the Probate Court was incorrect in relying on *Murray v. United States*, 687 F.2d 386 (Cl.Ct.1982) and *Estate of Lock*, 122 Cal.App.3d 892, 176 Cal.Rptr. 358 (Cal.Ct.App.1981) because those cases are distinguishable from the facts before the Probate Court in that the donor in each of those cases never filed a tax return. Until the donor files a tax return, the statute of limitations for making an assessment against the donor does not begin to run. 26 U.S.C. § 6501(c)(3). Using the filing of a return as the distinguishing factor is patently unfair to the donees in this situation, as their liability to pay taxes on gifts out of their own pockets is then dependent on the morality of their donor; if Mrs. O'Neal had shirked her duty to file a gift tax return, the estate and not the donees would be liable for the full amount of taxes.

gifts as transferees. Plaintiffs believe that because the transferees represented an available source of payment, somehow Oliver's estate was absolved of any responsibility for the delinquent gift taxes. However, plaintiffs' argument fails to recognize that even though the transferee liability provision causes a donee to be immediately and directly liable for the gift tax should the donor fail to pay the tax when due, section 6901(a)(1)(A)(iii), this does not prevent the IRS from seeking payment from the donor. As previously stated, section 2502(d) requires that the gift tax be paid by the donor ... or, if he dies, upon his estate. Treas. Reg. § 25.2502-2 (1958). The liability of the donee arises only should the donor fail to pay the tax, section 6324(b), and is, in that sense, secondary or qualified. *Mississippi Valley Trust Co. v. Commissioner,* 147 F.2d 186, 187-88 (8th Cir. 1945). There is nothing in the Code requiring the IRS to obtain recovery from the donees in lieu of attempting to secure payment directly from the assets of the donor's estate. For this reason, we find that the IRS acted completely within its prerogative in assessing and collecting the unpaid gift taxes from Oliver's estate.

*Murray*, 687 F.2d at 393.

Independent of the foregoing case law, there is yet another compelling reason why claimants are entitled to recover. If the donees were afforded no claim against the estate of Mrs. O'Neal, and the estate were not entitled to deduct the claim, the government would be unduly and unjustly enriched.

**B. Whether the attorney fees paid to the law firm of Chamberlain, Hrdlicka, White, Williams & Martin, in the amount of $74,485 are deductible by the estate?**

Administrative expenses deductible for federal estate tax purposes include attorney's fees. 26 U.S.C. § 2053(a)(2); § 20.2053(a)(2), Estate Tax Regs. The amount of claims for fees must be actually and necessarily incurred in the administration of the estate and the amount sought to be deducted from the estate must be reasonable under the circumstances.

§ 20.2053-3, Estate Tax Regs; *Estate of Calcagno*, T.C. Memo 1989-677.[32]  The expenses

contemplated in the law are those which normally attend the settlement of an estate.

Expenditures not essential to the proper settlement of an estate, but incurred for the

individual benefit of the heirs, legatees, or devisees, may not be taken as deductions.  §

20.2053-3(a), Estate Tax Regs. *See also Pitner v. United States*, 388 F.2d 651, 659-60 (5th

Cir.1967); *Marcus v. DeWitt*, 704 F.2d 1227, 1229 (11th Cir.1983).  The estate bears the

burden of proving its entitlement to the deduction.  *See e.g. New Colonial Ice. Co. v.

Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934).

The firm of Chamberlain, Hrdlicka, White, Williams and Martin ("Chamberlain,

Hrdlicka") was jointly engaged by the donees, Mr. O'Neal's estate, Mrs. O'Neal, and,

following Mrs. O'Neal's death, the Estate of Elizabeth P. O'Neal, to contest the IRS's

assertion of transferee gift and generation-skipping transfer tax liability regarding Mr. and

Mrs. O'Neal's 1987 gifts and to determining the proper value of the Company stock given

by her to the donees.  Plaintiffs' exhibit 1 at 2; Aughtry affidavit at 3.  The plaintiffs allege

that $74,485.00 in fees were paid to Chamberlain, Hrdlicka by Mrs. O'Neal's attorney-in-fact

pursuant to a durable power of attorney prior to her death and that  $114,022.00 in fees were

paid to Chamberlain, Hrdlicka by Mrs. O'Neal's estate.

---

[32] In *Estate of Calcagno*, T.C. Memo 1989-677, the court stated "Leaving aside the question as to whether Mr. Bianco's affidavit is admissible as evidence, it contains no more than a general description of the work done and an indication of the total number of hours spent and his rate of billing. No supporting time records or other evidence was submitted..."  The court notes that the information described is still more than the court here has been given to consider.

The IRS denied the deduction for the fees paid by Mrs. O'Neal's estate to Chamberlain, Hrdlicka for its services. Defendant's exhibit 36. The IRS also claims that the fees paid by Mrs. O'Neal's attorney-in-fact to Chamberlain, Hrdlicka for services rendered prior to Mrs. O'Neal's death were improper and those payments should have been included in the estate as a debt owed to the estate by her attorney-in-fact. Defendant's exhibit 36. The IRS asserts that the payments were made on behalf of the donees and not for the benefit of Mrs. O'Neal or her estate. Defendant's exhibit 36. The IRS further asserts that the estate has not provided evidence to substantiate the deduction for attorneys' fees. The question before this court is not whether attorney fees are deductible as administrative expenses from an estate, but rather, whether the attorney fees sought to be deducted here have been substantiated. The court finds they have not.

The estate has the burden of substantiating its deduction for attorney fees. *See Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Calcagno v. Commissioner,* T.C. Memo. 1989-677. A deduction for attorney fees is disallowed when the same is unsubstantiated. *Fox v. Commissioner,* T.C. Memo. 1995-30.[33] "It is necessary ... that the

---

[33]In requesting awards of attorney fees from the court, the starting point for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir.1988); citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *See also Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir.1996). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir.1987). Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. *Norman*, 836 F.2d at 1299; citing *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Excessive, redundant

deduction be for an 'administration expense' within the meaning of that term as it is used in the statute, and that the amount sought to be deducted be reasonable under the circumstances." *Pitner*, 388 F.2d at 659.

No itemized breakdown of the services provided by the Chamberlain firm, such as invoices, itemized bills, fee letters or fee arrangements have been provided. The affidavits of David D. Aughtry, Emmet O'Neal, II and Dilmus Richey are insufficient to satisfy the evidentiary burden. Unlike the facts before the court in *DeWitt v. Commissioner*, T.C. Memo 1987-502, the affidavits here do not contain disbursement schedules filed with another court. While Chamberlain, Hrdlicka may have provided benefits to Mrs. O'Neal and her estate, without itemized statements showing for whom the work was done, by whom the work was done, the hourly rate charged, the number of hours spent, and what work was done, this court is unable to determine the reasonableness or propriety of these amounts. Without itemizations, this court will not approve any attorney fee claims. Affidavits alone are not

---

or otherwise unnecessary hours must be excluded from the amount claimed. *Norman*, 836 F.2d at 1301(... "the district court is charged with deducting for redundant hours. Redundant hours generally occur where more than one attorney represented a client"), citing *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40.

While this court is cognizant that the relevant question here is whether these fees may be deducted from the estate, this court finds that the "lodestar" standard set forth in this circuit is a starting point for assessing the reasonableness of claimed fees. Here, the court has no basis to determine the reasonableness of the fees due to a complete lack of evidence of the same. Indeed, there is nothing before this court to prove any work was done by these attorneys to benefit the estate other than their own, self-serving statements, nor is there any evidence that the estate paid these attorneys for any services. The plaintiffs have offered no case law to this court to establish they need not prove the reasonableness of their attorney fees when claiming them as deductible against an estate.

sufficient. This is especially true in a situation such as that before the court, where multiple law firms have represented multiple parties in multiple litigations. Clearly, only those services performed for the estate are deductible from the estate, and this court cannot ascertain the above information from the affidavits submitted.[34]

The court rejects the plaintiffs' claims of privilege in not itemizing the attorney fees the estate wants to deduct. Hearing transcript at 68. *See United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir.1992) ("We have held on numerous occasions that "[t]he identity of a client or matters involving the receipt of fees from a client are not normally within the [attorney-client] privilege" (citations omitted)).

The plaintiffs could have submitted invoices and detailed hourly statements to the court *in camera*, but the plaintiffs chose not to avail themselves of this opportunity. In consideration of the foregoing, the court rules in favor of the defendant and against the plaintiffs on this issue and finds that the attorney fees paid to Chamberlain, Hrdlicka are not deductible expenses of the estate.

---

[34]The court notes that the estate was represented in the probate proceedings by the administrator *ad litem*, who was paid for his services by the estate and the estate deducted the same on the estate tax return.

### C. Whether the estate is entitled to a deduction for interest?

Generally, interest paid on estate taxes is deductible as an administration expense under 26 U.S.C. § 2053(a)(2). *See e.g. Estate of Hoover v. Commissioner*, T.C. Memo 1985-183 (citations omitted).    To be deductible, the interest expenditure must meet the requirements of 26 U.S.C. §2053(a)(2) and the regulations thereunder. Those regulations require that the amount is ascertainable with reasonable certainty and will be paid, even if the exact amount is not known. See § 20.2053-1(b)(3), Estate Tax Regs. Defendant asserts in its counterclaim that Mrs. O'Neal's estate cannot deduct interest on estate tax owed until such time as the amount is determinable with reasonable certainty. Plaintiffs assert that once the amount of interest has been determined, it is properly deductible. Plaintiffs' brief in opposition to defendant's motion for summary judgment at 19. At oral argument, counsel for defendant conceded that the interest is deductible. Hearing transcript at 90. All that remains is for the amount of the interest deduction to be determined, and that determination will be based upon the decision in this proceeding.

In consideration of the foregoing, the court finds that this issue is no longer the subject of a dispute between the parties. Both parties are arguing that the interest is deductible from the estate. Hearing transcript at 86, 90-91. As such, the court finds that when the amount of estate tax due can be ascertained with reasonable certainty, the estate shall be entitled to a deduction for interest on the same.

**D. Whether the payments of funds to Chamberlain, Hrdlicka before the date of Mrs. O'Neal's death are deductible by the estate?**

As in the dispute concerning the payment of fees to the Chamberlain, Hrdlicka firm after the date of Mrs. O'Neal's death, payments of fees before the date of her death as being for her benefit are questionable. Mr. Emmet O'Neal, acting under a durable power of attorney, paid to the firm $114,022.23 from Mrs. O'Neal's bank account. *See* defendant's exhibit 45. The plaintiffs state that since Emmet O'Neal was acting as the "true and lawful agent or attorney in fact" pursuant to the Durable Power of Attorney, the payments were thus for the benefit of Mrs. O'Neal. This court requires more substantial proof of attorney fee claims.[35]

Under Alabama law, powers of attorney are strictly construed and are restricted to those powers expressly granted and those incidental powers that are necessary to effectuate the expressed powers. *Lamb v. Scott*, 643 So.2d 972, 973 (Ala.1994). *See also Sevigny v. New South Federal Sav. and Loan Ass'n.*, 586 So.2d 884, 886-887 (Ala.1991). A power of attorney grants only those powers expressly conferred. *Lamb*, 643 So.2d at 974.

One who accepts a power of attorney covenants to use the power for the sole benefit of the one conferring the power and to use it in a manner consistent with the purposes of the agency relationship created by the power of attorney. *Lamb*, 643 So.2d at 974. An agent is

---

[35]*See* discussion of attorney fees, *infra* at "2". Because the court finds the same problems plague both claims of attorney fees, the court adopts its above findings regarding the paucity of evidence rather than repeat them here in full.

not permitted to occupy a position that would allow him to profit as a result of that agency relationship. *Lisenby v. Simms,* 688 So.2d 864, 867 (Ala.Civ.App. 1997).

The power of attorney here in question limits the power to the payment of Mrs. O'Neal's debts, and expressly prohibits use of the same to pay any of his own debts. *See* Durable Power of Attorney executed by Mrs. O'Neal on May 7, 1992 at ¶ 6. Without an accounting by the attorneys who clearly, by the affidavits submitted, represented Emmet O'Neal, Mrs. O'Neal, Mr. O'Neal, the donees and the estate, this court finds that amount may not be deducted from the estate of Mrs. O'Neal.

In consideration of the foregoing, the court finds that the sum of $114,022.23 is owed by Mr. Emmet O'Neal, plaintiff, to the estate of Mrs. O'Neal, for inclusion of said amount in the gross estate.

### E. Whether the IRS is entitled to revalue the gifts of stock to increase the Adjusted Taxable Gifts for 1987 and thus increase the amount of Gift Tax payable by the estate?

Defendant asserts that the gifts must be revalued for federal estate tax purposes. In the *O'Neal* Tax Court litigation, the parties agreed that the value of the stock should be increased. Given that the value of the stock was increased, the Adjusted Gift Taxes of the Estate must be increased to represent this revaluation and the Gift Tax Payable must be increased as well.[36]   This court finds the plaintiffs' argument to the contrary and their

---

[36]"Adjusted Taxable Gifts" means the total amount of taxable gifts, other than gifts includible in the decedent's gross estate, made by the decedent after December 31, 1976, 26 U.S.C. § 2001(b).

41

reliance on *Boatmen's First National Bank v. United States*, 705 F. Supp. 1407 (W.D. Mo. 1988), misplaced.[37]

The court acknowledges that the IRS is barred from revaluing a decedent's prior gifts (after the gift tax statute of limitations had expired) in order to recover additional gift taxes from the estate. However, the court notes that 26 U.S.C. § 2504(c) has repeatedly been held to apply to the assessment of gift taxes only, and does not apply to the estate tax provisions.[38] *See e.g., Evanson v. United States,* 30 F.3d 960, 963 (8th Cir.1994); *Levin v. Commissioner*, 986 F.2d 91, 92 (4th Cir.1993). Accordingly, nothing prohibits the IRS from using the agreed upon stock gift values for calculating estate taxes.[39]

---

[37]The court notes that revisions in the estate tax laws actually adopt the rational of *Boatmen's, see supra* at fn. 38.

[38] 26 U.S.C. § 2504(c) states:

If the time has expired within which a tax may be assessed under this Chapter ... on the transfer of property by gift made during the preceding calender period, as defined in section 2502(b), and if a tax under this chapter ... has been assessed or paid for such calender year, the value of such gift made in such preceding calender year, shall, for purposes of computing the tax under this chapter for any calender year, be the value of such gift which was used in computing the tax for the last preceding calender period for which a tax under this chapter or under corresponding provisions of prior laws was assessed or paid.

[39]This conclusion is further supported by 26 U.S.C. § 2001(f), a new code provision which applies only to gifts made after August 5, 1997 to limit the revaluation of certain prior gifts for purposes of computing federal estate tax. No similar restriction on the revaluation of gifts made before this date exists.

In consideration of the foregoing, the court finds that the estate shall use the adjusted gift tax value as well as the increased gift tax payable amount in computation of federal estate taxes due.

## CONCLUSION

In consideration of all of the foregoing, it is hereby **ORDERED, ADJUDGED** and **DECREED** as follows:

On the plaintiffs' motion for summary judgment on the issue of a deduction of the estate for the amount of the additional gift tax, judgment is hereby rendered in favor of the plaintiffs and against the defendant.

On the plaintiffs' motion for summary judgment on the issue of a deduction of the estate for attorney fees paid to Chamberlain, Hrdlicka both before and after death of Mrs. O'Neal, the court hereby enters judgment in favor of the defendant and against the plaintiffs, the court having found that such fees have not been justified in the administration of the estate.

On the defendant's motion for summary judgment on the counterclaim for attorney fees paid to Chamberlain, Hrdlicka by Emmet O'Neal under the guise of a power of attorney for Mrs. O'Neal, the court hereby enters judgment in favor of the defendant and against the plaintiff and **ORDERS** the plaintiff Emmet O'Neal to repay the same to the estate.

On the plaintiffs' motion for summary judgment on the issue of a deduction for interest by the estate, the court hereby enters judgment in favor of the plaintiffs and against

the defendant.  The court holds that said deduction shall be allowed as soon as the same may be ascertained with reasonable certainty.

On the defendant's counterclaim for the addition of the revalued stock into the estate for calculation of federal estate taxes due, the court hereby enters judgment in favor of the defendant and against the plaintiffs.

The court finding that no issues remain in this matter, the court further **ORDERS** that this case be and hereby is **DISMISSED WITH PREJUDICE**, each party to bear its own costs.

**DONE and ORDERED** this the _12_ day of November, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE